IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

RACHEL EILEEN STOUT,  )
                      )
            Plaintiff, )
                      )           3:14-CV-01697-JO
    v.                )
                      )
CAROLYN W. COLVIN, Acting Commissioner of ) OPINION AND ORDER
Social Security,       )
                      )
            Defendant. )

JONES, J.,

Plaintiff Rachel Stout appeals the Commissioner's decision denying her application for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act. The court has jurisdiction under 42 U.S.C. § 405(g). I AFFIRM the Commissioner's decision.

**PRIOR PROCEEDINGS**

Stout filed concurrent applications under Title II and Title XVI, alleging disability beginning in November 2008, due to back problems. Admin. R. 34, 216. The ALJ applied the five-step analysis outlined in the regulations to determine whether Stout was disabled. Admin. R. 36-41. The ALJ found that Stout's ability to work was adversely affected by degenerative disk disease, spinal stenosis, and obesity. Admin. R. 36. The ALJ determined that, despite these impairments, Stout retained the residual functional capacity ("RFC") to perform a range of light work, with limitations

-1-   OPINION AND ORDER

on how long she could be required to stand, walk, sit, climb, and engage in postural activities such as balancing, stooping, kneeling, crouching, and crawling. The ALJ found that Stout also required a work environment where she would not be exposed to hazards such as unprotected heights or dangerous machinery. Admin. R. 37. The vocational expert ("VE") testified that a person with Stout's RFC could perform the requirements of light, unskilled occupations such as small products assembler and cashier, representing several hundred thousand jobs in the national economy. Admin. R. 40, 97. Accordingly, the ALJ concluded that Stout was not disabled. Admin. R. 41.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings of fact are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). Under this standard, the Commissioner's factual findings must be upheld if supported by inferences reasonably drawn from the record even if evidence exists to support another rational interpretation. *Batson*, 359 F.3d at 1193; *Andrews v. Shalala*, 53 F.3d 1035, 1039-40 (9th Cir. 1995).

## DISCUSSION

### I. Claims of Error

Stout contends the ALJ failed to accurately assess her RFC because she did not fully credit Stout's subjective statements about the severity of her limitations, discounted the statements of her friend, Kimberly Darby, and failed to fully develop the record. Stout contends these errors led the ALJ to elicit testimony from the VE with hypothetical assumptions that did not accurately reflect her limitations. As a consequence, Stout contends, the ALJ's conclusion that she could perform the occupations identified by the VE was not supported by substantial evidence.

## II. Credibility Determination

In her application papers, Stout alleged that she had constant pain in her back, legs, and hips. Her pain was so intense that it made concentration difficult, caused her leg to "not work," and left her unable to carry anything for fear of dropping it. In addition, sitting for a maximum of ten minutes was so painful it could cause her eyes to water. Admin. R. 238. At the hearing, Stout testified that her back pain was constant and made it difficult for her to walk or do anything. Admin. R. 75. Stout claimed that she had to wiggle around to get out of bed, and when she tried to do anything "the next thing I know, I am down for three days . . . I can't get out of bed . . . ." Admin. R. 76.

The ALJ found that Stout had medically determinable impairments that could reasonably be expected to produce back pain. Admin. R. 36-37. Furthermore, as reflected in the RFC assessment, the ALJ believed that Stout's back pain significantly limited her ability to perform basic work activities such as sitting, standing, walking, climbing, kneeling, stooping, and so forth. Admin. R. 37. The ALJ narrowed Stout's RFC by significantly limiting the amount of time she could be expected to engage in each of these activities. The ALJ also accepted Stout's claim that her back pain was very distracting and made concentration difficult and she limited Stout's RFC accordingly to simple, repetitive work typical of unskilled occupations. Admin. R. 39.

Because the ALJ found that Stout had medically determinable impairments that could reasonably be expected to produce some degree of pain and did not identify affirmative evidence of malingering, the ALJ was required to assess the credibility of Stout's statements about the intensity, persistence, and limiting effects of her impairments. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007); *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

The ALJ found less than fully credible Stout's claims that her pain was so intense and persistent that she could not sit more than ten minutes, that she could not walk or do anything, that she would be down for three days if she tried to do anything, and that she could not do any work, even within the limitations of her RFC assessment. Admin. R. 37-39. An adverse credibility determination must include specific findings supported by substantial evidence and a clear and convincing explanation of the rationale. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1160 (9th Cir. 2008); *Smolen v. Chater*, 80 F.3d 1273, 1281-82 (9th Cir. 1996). The findings must be sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008).

In assessing credibility, an ALJ must consider all the evidence in the case record, including the objective medical evidence, the claimant's treatment history, medical opinions, daily activities, work history, the observations of third parties with knowledge of the claimant's functional limitations, and any other evidence that bears on the consistency and veracity of the claimant's statements. *Tommasetti*, 533 F3d at 1039; *Smolen*, 80 F3d at 1284; SSR 96-7p, 1996 WL 374186, at *5.

The ALJ's decision demonstrates that she considered all the evidence relating to the proper factors for evaluating Stout's credibility. She found that the objective medical evidence did not suggest the extreme limitations Stout claimed. Admin. R. 38-39. For example, the diagnostic imaging from August 2007, when Stout was fully functional and working, showed that she had degenerative disk disease with canal and forminal stenosis. Notably, Stout continued to work despite her medical condition through November 2008. Admin. R. 222, 278-279. At her latest MRI in October 2012, her condition had only "mildly worsened" since the 2007 MRI. Admin. R. 361. It

-4-    OPINION AND ORDER

would be reasonable to expect that a drastic deterioration from being fully functional and employed in 2007 to being fully debilitated the next year would be reflected by more than mild worsening in the diagnostic imaging.

Similarly, the clinical findings from physical examinations did not reflect a precipitous decline in Stout's functioning. In November 2007, before the alleged onset of disability, Stout was seeing Edward Lairson, M.D., for chronic back pain management. Dr. Lairson obtained generally normal findings on physical examination with full motor strength, generally good range of motion in the spine and hips, a negative FABER test for pathology in the hip and sacroiliac joints, minimal tenderness to palpation, and negative straight leg raise tests for radiculopathy. Admin. R. 310. In June 2010, clinical findings showed that Stout had normal muscle tone, strength, gait, and a negative straight leg raise. Admin. R. 347. In October 2012, Stout continued to demonstrate normal muscle tone, strength, reflexes, and gait and she continued to have negative straight leg raise tests for radiculopathy. Admin. R. 361. The clinical evidence did not include signs of atrophy or weakness that would reasonably be expected if Stout was confined to her bed for several days every time she tried any activity. When the objective medical evidence conflicts with a claimant's subjective complaints, it supports an adverse inference that can undermine the claimant's credibility. *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999).

The ALJ found that Stout's treatment history did not suggest the extreme limitations she claimed. From June 2007 through October 2012, Stout has opted for only conservative treatment with pain medications and infrequent epidural steroidal injections. Admin. R. 360. She did not seek any change in treatment at the time she allegedly became disabled in November 2008. Admin. R. 310, 360, 376, 379, 388. When a claimant alleges debilitating pain but opts for only conservative

treatment, it supports an adverse inference as to the claimants statements about the severity or intensity of the symptoms. *Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007).

In addition, conservative treatment with medications suggests that the medications are effective. Indeed, Stout's treatment notes indicate that her pain "seems to be controlled" with medications. Admin. R. 384. Impairments that are effectively controlled by medication are not disabling. *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006).

The ALJ also considered Stout's daily activities, and determined that they suggested she was not as limited as she claimed. Admin R. 39. In her function report, Stout reported a fairly broad range of activity, including grooming, cooking, running errands, driving a car, paying bills, using a check book, and crocheting. Admin. R. 240-242. While these activities are not equivalent to full time work, they are inconsistent with the extreme limitations Stout alleged in her testimony. In light of the treatment notes and objective medical evidence, it was reasonable for the ALJ to conclude that Stout's activities of daily living were not consistent with the degree of symptoms alleged.

The ALJ's findings are supported by substantial evidence in the record and are sufficiently specific for me to conclude that the ALJ did not arbitrarily reject Stout's subjective statements. Her reasoning is clear and convincing and the credibility determination will not be disturbed. *Tommasetti*, 533 F.3d at 1039; *Carmickle*, 533 F.3d at 1160.

### III. Lay Witness Statement

Stout contends the ALJ improperly discounted the statements given by her friend Kimberly Darby in a written third party function report submitted in support of Stout's application. Darby said that Stout could independently perform a wide range of activities, including personal care and grooming, light housework, preparation of simple meals, driving a car, shopping, and painting and

sewing. Admin. R. 38, 246-50. Darby said Stout could engage in these activities for only a limited amount of time. She said Stout could not sit, stand or walk for extended periods and "is in so much pain that she ends up having to lay down to rest her back." Admin. R. 246. Darby said Stout no longer cooks anything that takes very long, and that she only shops for "smaller things that don't take long to get . . . ." Admin. R. 248. She stated that Stout now "wears clothes that are easy to get on" and that she "brushes her hair and puts it in a ponytail" because "she is unable to style her hair." Admin. R. 247. Additionally, Darby stated that Stout used to paint and sew, but that Stout no longer engages in these hobbies very often because "she can't sit up for very long . . . ." Admin. R. 250.

The ALJ considered Darby's report but found that it tended to support the conclusion that Stout remained capable of activities within the limitations of her RFC assessment. He did not believe Darby's report suggested that Stout would be unable to perform work restricted to meet her RFC assessment. An ALJ must consider the statements of a lay witness, and must give reasons germane to the witness in order to discount the statements. *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009). An ALJ need not clearly link the reasons to her determination that the lay witness testimony should be discounted, as long as she notes germane reasons somewhere in the decision and they are supported by substantial evidence. *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001). Further, when the statements of a lay witness are similar to the claimant's subjective complaints, then an ALJ's clear and convincing reasons for rejecting the claimant's testimony are considered to be germane to the lay witness. *Valentine,* 574 F.3d at 694.

Here, Darby's statements regarding Stout's activities of daily living are substantially the same as Stout's subjective complaints, and the ALJ discounted Darby's statements based, in part, on the same rationale she used to discount Stout's subjective testimony. Specifically, the ALJ found that

-7-    OPINION AND ORDER

the objective medical evidence, treatment notes, and Stout's daily activities do not support Darby's statements "[t]o the extent that [] Darby suggests that [Stout's] impairments render her unable to work . . . ." Admin. R. 39. The ALJ's rationale for discounting Stout's subjective statements applies equally to Darby's function report. Therefore, the ALJ's reasons for discounting Darby's statements are supported by the record and germane to Darby. The ALJ's evaluation of the lay witness statements will not be disturbed.

The ALJ also commented that Darby's close friendship with Stout and the desire to help her likely influenced Darby's statements regarding Stout's abilities. Admin. R. 39. This is an improper reason for discounting the statements of a lay witness, because it is not germane to the particular witness. Indeed, such reasoning would exclude statements from all the friends and family of any claimant. Friends and family members and others in a position to observe a claimant's symptoms and daily activities are competent sources of relevant information about the claimant's condition. *Dodrill v. Shalala,* 12 F.3d 915, 918 (9th Cir. 1993). Their statements cannot be discounted solely because of their relationship to the claimant. However, because the ALJ provided a proper basis for discounting Darby's statements independent of her friendship with Stout, the introduction of the additional commentary was inconsequential. *Batson v. Comm'r of Soc. Sec. Admin.,* 359 F.3d at 1197.

## IV. Development of Record

Stout argues that the ALJ failed to fully and fairly develop the record, because she did not obtain a copy of a 2012 MRI study. Pl.'s Opening Brief at 8. This argument refers to a lumbar spine MRI from October 2012. Admin. R. 355-56. Stout first made the ALJ aware of the MRI study at her administrative hearing, after which the ALJ obtained a release of information from Stout with

-8-    OPINION AND ORDER

which she requested updated medical records from the clinic that performed the MRI. Admin. R. 58, 276. The case record contains the records that she received in response to her request. The current case record does not include a copy of the MRI study, but does include chart notes reflecting a discussion of the MRI results as well as objective clinical findings by the primary care provider. Admin. R. 356, 361.

In Social Security cases, the ALJ has a duty to fully and fairly develop the record. *Brown v. Heckler,* 713 F.2d 441, 443 (9th Cir. 1983). Because Stout appeared without representation at the hearing, the ALJ had a heightened duty to ensure that the record was complete. *Cox v. Califano,* 587 F.2d 988, 991 (9th Cir. 1978). The ALJ's duty to supplement a claimant's record is triggered when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence. *Webb v. Barnhart,* 433 F.3d 683, 687 (9th Cir. 2005); *Mayes v. Massanari,* 276 F.3d 453, 459-460 (9th Cir. 2001).

Here, the chart notes are not ambiguous and the ALJ did not find the record inadequate to evaluate Stout's claim. The chart notes indicated that Stout continued to have an abnormal MRI and that the degeneration in her lumbar spine had "mildly worsened" since her last MRI in 2007. Admin. R. 361, 394. The contemporaneous clinical findings, however, remained relatively unchanged with normal muscle tone, strength, reflexes, and gait and Stout continued to have negative straight leg raise tests for radiculopathy. Admin. R. 361. Stout's pain with medications remained about the same and she had only begun to consider a consultation with neurosurgery. Admin. R. 356, 394.

The inclusion of a copy of the MRI images would add nothing useful to the case record. The treatment notes reflect that Stout's medical providers interpreted the MRI images to show only mildly worsened degeneration and the clinical findings were consistent with that interpretation.

ALJs are not authorized or qualified to interpret MRI images. Here, it was appropriate for the ALJ to defer to Stout's medical providers' interpretation of the MRI together with the contemporaneous clinical findings regarding Stout's limitations. I find no error in the ALJ's development of the record.

## V.    Step Five Finding

Stout challenges the ALJ's determination at step five that jobs exist in the national economy that accommodate the limitations in Stout's RFC. The ALJ determined that Stout retained the RFC to perform a range of work requiring light exertion, but not the full range of light work. When a claimant cannot perform the full range of work at a given level of exertion, an ALJ cannot use the medical-vocational rules in 20 C.F.R. Part 404, Subpart P, Appendix 2, to resolve the question of disability. Instead, the ALJ must obtain the testimony of a vocational expert to determine whether jobs exist that accommodate the claimant's RFC. *Hoopai v. Astrue*, 499 F3d 1071, 1077 (9th Cir 2007); *Moore v. Apfel*, 216 F.3d 864, 869 (9th Cir. 2000); *Burkhart v. Bowen*, 856 F2d 1335, 1341 (9th Cir 1988).

Here, the ALJ elicited testimony from a vocational expert based on the limitations she found supported by the record. The VE testified that a person with the limitations in Stout's RFC could perform the activities required in light unskilled occupations such as cashier and small products assembly. The VE estimated that these occupations represent over half a million jobs in the national economy. Admin. R. 97. Thus, substantial evidence supports the ALJ's conclusion that a significant number of jobs exist in the national economy that are not precluded by the limitations in Stout's RFC.

Stout challenges the VE's testimony that the cashiering and small products assembly occupations can be performed either sitting or standing. Stout relies on the broad description of unskilled work used in Social Security Ruling 83-12, which says that in unskilled jobs, "a person cannot ordinarily sit or stand at will." 1983 WL 31253 at *4. This argument has no merit because the ALJ was entitled to rely on the experience and expertise of the VE regarding the specific occupation he identified, instead of the broad description of unskilled work in SSR 83-12. Accordingly, I find no error in the ALJ's step five determination.

## CONCLUSION

Stout's assignments of error cannot be sustained. Accordingly, the Commissioner's final decision is AFFIRMED.

DATED this 22nd day of October, 2015.

Robert E. Jones, Senior Judge
United States District Court